IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**TRIDENT SEAFOODS CORPORATION,**<br><br>**Defendant.** | **Civil Action 2:11-cv-01616**<br><br>**MOTION TO ENTER AMENDED CONSENT DECREE**<br><br>**NOTE ON MOTION CALENDAR: JUNE 14, 2012** |

## MOTION TO ENTER AMENDED CONSENT DECREE

The United States of America moves the Court to enter the Proposed Amended Consent Decree that was lodged in this case on April 26, 2012 (Docket No. 5). The United States published notice of this Amended Consent Decree in the Federal Register on May 9, 2012 (77 Fed. Reg. 27251), and solicited public comments thereon. No comments were received. As discussed below, the Amended Consent Decree is fair, reasonable, and in the public interest. Therefore, the United States respectfully requests that the Court now sign and enter the Proposed Amended Consent Decree.

A. Brief Factual History

Trident Seafoods Corporation ("Trident" or "Defendant") is a privately held Washington corporation with its corporate offices in Seattle, Washington. Trident is in the seafoods processing business, and owns more than twenty on-shore and off-shore processing facilities across Alaska. The United States filed a Complaint in the above captioned action on September 28, 2012, alleging violations by Trident of the Clean Water Act and National Discharge

Elimination System ("NPDES") permits issued thereunder. (Docket No. 1). The Complaint states factual allegations and legal assertions that give rise to numerous potential violations. A Proposed Consent Decree intended to resolve the alleged violations was lodged with the Court contemporaneously with the filing of the Complaint. (Docket No. 2). That Proposed Consent Decree provided for Trident to pay a civil penalty of $2.5 million and to implement specified injunctive measures at certain of its facilities. Notice of the lodging of that Consent Decree was published in the Federal Register, soliciting comments on the terms of the Decree. Three comments were received, from three related entities, all voicing the same concern: that the Consent Decree's complete and immediate prohibition on waste discharges from Trident's St. Paul Island facility1 would cause Trident to shut down that facility during the summer halibut season, resulting in severe economic hardship to the commenters, who are largely dependent for their livelihood on halibut, and the ability to process that halibut at the St. Paul facility. No other

[1] St. Paul Island, one of the "Pribilof Islands," is a small, remote island, located approximately 650 miles southwest of Anchorage in the Bering Sea. The island is home to approximately 300 residents, nearly all of whom are members of the Aleut Community of St. Paul Island, a federally recognized Indian tribe. Comments on the Consent Decree were received from the Aleut Community of St. Paul Island, TDX Corporation, the Tribe's economic development entity, and the Central Bering Sea Fisherman's Association ("CBSFA"), a non-profit organization that arranges with Trident for processing and marketing the catch of its members, most of whom are members of the Aleut Community of St. Paul Island. St. Paul Island also is home to a significant percentage of the world's Northern Fur Seals, Stellar Sea Lions, and Northern Sea Otters, as well as millions of migratory water fowl. The outfall at Trident's St. Paul facility discharges into one of the world's most significant rookeries for the Northern Fur Seal, a species characterized as "depleted" by the National Marine Fisheries Service. The Proposed Consent Decree previously filed with the Court included an immediate prohibition on any discharge from this outfall during the months May-December, the fur seal's birthing season.

comments were received.

B. Terms of Proposed Amended Consent Decree

The Proposed Consent Decree originally lodged with the Court provided for Trident to pay a civil penalty of $2.5 million and to implement injunctive measures estimated to cost $30 – 40 million at six of its facilities.2 These injunctive measures include source control measures intended to reduce waste discharges and to reduce the size of ocean floor waste piles associated with five Trident facilities, measures intended to mitigate the effects of existing ocean floor waste piles associated with four of the plants, and construction and operation of a fish meal plant intended to process all of the waste generated by one Trident plant, with sufficient capacity to process the waste generated by several nearby plants.

The Proposed Amended Consent Decree materially differs from the Proposed Consent Decree originally lodged with the Court in only one respect3: it modifies the injunctive requirements applicable to Trident's St. Paul Island facility to address the concerns raised by the commenters. Specifically, those requirements have been modified to: 1. Phase in over two years the elimination of solids discharge during May – December, rather than imposing an immediate prohibition; and 2. Continue to allow the discharge of liquid waste (effluent containing no waste

---

[2] While the United States' complaint alleges more than 480 Clean Water Act violations at fourteen of Trident's facilities, many of those were monitoring and/or reporting violations that Trident has since taken steps to rectify. The injunctive measures required by the Proposed Consent Decree (and the Proposed Amended Consent Decree) are directed at actual and/or anticipated environmental harms identified by EPA.

[3] The Proposed Amended Consent Decree is identical to the Consent Decree previously lodged with the Court except for one material modification: Paragraph 46 is revised and references a new Attachment D to address the concerns raised by commenters, as detailed herein.

exceeding one millimeter in any dimension), and require Trident to monitor the effluent for a prescribed suite of contaminants and to monitor the facility's outfall daily and document the presence and abundance of marine mammals and sea birds.4 EPA believes that these modifications are protective of the environment and the marine mammals and sea birds inhabiting St. Paul Island and its environs, while allowing the Tribe and other commenters to maintain a viable fishing economy while working with Trident to devise alternatives to discharging waste

## STANDARD OF REVIEW

The approval of a consent decree is a judicial act committed to the informed discretion of the trial court. *Bragg v. Robertson,* 83 F. Supp. 2d 713, 717 (S.D. W.Va. 2000), aff'd, 248 F.3d 275 (4th Cir. 2001). In examining a proposed consent decree, the district court "should be guided by the general principle that settlements are to be encouraged." *Am. Canoe Ass'n v. E.P.A.*, 54 F. Supp. 2d 621, 625 (E.D. Va. 1999) (quoting *United States v. North Carolina,* 180 F.3d 574, 581 (4th Cir. 1999)); *Colorado. v. City & Ctny. of Denver*, No. 10-cv-1303, 2010 WL 4318835, at *4 (D. Colo. Oct. 22, 2010) (public policy strongly favors the settlement of disputes without litigation and when examining a proposed consent decree the court should be mindful of the strong policy favoring the voluntary settlement of disputes) (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)).

---

[4] These requirements are set forth at Paragraph 46 of the Proposed Amended Consent Decree and Attachment D thereto.

> Voluntary settlement of civil controversies is in high judicial favor . . . . When the effort [to settle] is successful, the parties avoid the expense and delay incidental to litigation of the issues; the court is spared the burdens of a trial and the preparation and proceedings that must forerun it.

*Pennwalt Corp. v. Plough, Inc.* 676 F.2d 77, 80 (3d Cir. 1982). The policy favoring settlement "is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of [EPA]." *United States v. Cannons Eng'g Corp*., 720 F. Supp. 1027, 1035 (D. Mass. 1989), aff'd, 899 F.2d 79 (1st Cir. 1990); *S.E.C. v. Randolph,* 736 F.2d 525, 529 (9th Cir. 1984) ("courts should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment"); *United States v. Akzo Coatings of America, Inc.,* 949 F.2d 1409, 1436 (6th Cir. 1991) ("presumption in favor of voluntary settlement ... is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field"); *United States v. Montgomery,* Case No. 2:05-CV-131, 2007 U.S. Dist. LEXIS 44980, *3, (W.D. Mich. June 21, 2007), quoting *Kelley v. Thomas Solvent Co.,* 790 F. Supp. 731, 735 (W.D. Mich. 1991) ("There is perhaps a presumption of enforceability when the governmental agencies charged with enforcing the environmental statutes worked toward and approve of the consent decree."); *United States v. Rohm & Haas Co.,* 721 F. Supp. 666, 681 (D.N.J. 1989) (presumption of validity attaches to settlement negotiated by federal agency charged with its enforcement); *E.P.A. v. City of Green Forest*, 921 F.2d 1394, 1402 (8th Cir. 1990) (discretion given to EPA in enforcement of the Clean Water Act carries over to discretion in fashioning settlement); United States v. *Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 746 (9th Cir. 1995) ("a district court reviewing a proposed consent decree 'must refrain from second-guessing the Executive

Branch.'").

"A consent decree is essentially a settlement agreement subject to continued judicial policing. It is not a decision on the merits . . . , but is the product of negotiation and compromise." United States v. *Oregon,* 913 F.2d 576, 580 (9th Cir. 1990), *cert. denied,* 501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991); (citations and internal quotations omitted). Accordingly, in reviewing a consent decree, a court should not "substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong v. Bd. of Sch. Dir. of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Nor should it inquire "whether the settlement is one which the court itself might have fashioned, or considers as ideal . . . ." *Cannons*, 899 F.2d at 84, or seek to determine whether the proposed settlement provides for "every benefit that might someday be obtained in contested litigation." *United States v. Allegheny Ludlum Indus., Inc.* 517 F.2d 826, 850 (5th Cir. 1975). Rather, the Court should approve the settlement if it determines that the settlement is fair and reasonable, and resolves the controversy in a manner consistent with the public interest. *Citizens for a Better Env't v. Gorsuch,* 718 F.2d 1117, 1126 (D.C. Cir. 1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984); *Oregon,* 913 F.2d at 580; *United States v. Telluride Co.,* 849 F. Supp. 1400, 1402 (D. Colo. 1994).

Finally, a court is not authorized to rewrite or modify the parties' agreement; it must consider and approve or reject as a whole the proposal as submitted by the parties. *Brooks v. Georgia State Bd. of Elections*, 59 F.3d 1114, 1119-20 (11th Cir. 1995); *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348 (6th Cir. 1986); *Offices for Justice v. Civil Service Comm'n*. of S.F., 688 F.2d 615, 630 (9th Cir. 1982); *Williams v. City of New Orleans*. 694 F.2d 987, 993

(5th Cir. 1982).

## ARGUMENT

The Court should approve the Proposed Amended Consent Decree because it is fair, reasonable and furthers the public interest. First, the negotiations that resulted in the agreement embodied by the Proposed Amended Consent Decree went on for over two years. During those negotiations, the United States and Trident each were represented by sophisticated environmental counsel. These extended discussions resulted in an agreement that achieved a full resolution of all the claims asserted in the Complaint. Each of the commenters also was represented by sophisticated counsel in negotiations regarding the concerns expressed in the filed comments. Ultimately, the United States, Trident, and the commenters reached the agreement reflected in the Proposed Amended Consent Decree.5 Additionally, negotiations regarding the concerns expressed in the comments produced a Memorandum of Agreement between Trident and the CBSFA, providing that Trident and the CBSFA will work cooperatively to develop economically viable waste disposal alternatives and including Trident's commitment not to pass any added disposal costs on to the CBSFA or its members. In all these respects, the proposed Consent Decree is fair to the United States, Trident, and the commenters.

Moreover, the Consent Decree is in the public interest and "comports with the goals of Congress." See *Sierra Club v. Coca–Cola Corp.,* 673 F. Supp. 1555, 1556 (M.D. Fla. 1987). It does so by, among other things: (1) Requiring payment of a substantial penalty that is

---

[5] Indeed, as reflected in the United States' Notice of Lodging accompanying the lodging of the Proposed Amended Consent Decree (Docket No. 5), each of the commenters has withdrawn its comments and supports the Proposed Proposed Amended Consent Decree

commensurate with the violations alleged; (2) Establishing injunctive relief to insure that violations of the type set forth in the Complaint are less likely to occur in the future, including the establishment of stipulated penalties that apply to violations of the Consent Decree; and (3) Efficiently resolving the claims and defenses before the Court, as well as addressing the public comments received in response to the proposed settlement thereof. Thus, the Proposed Amended Consent Decree helps conserve the limited resources of the United States and this Court.

## **CONCLUSION**

For the reasons above, the United States respectfully request this Court to enter the Proposed Amended Consent Decree. Trident consents to entry of the Decree. Proposed Amended Consent Decree ¶ 99. No proposed order is attached because there is a signature block for the Court to execute on page 33 of the Proposed Amended Consent Decree lodged with the Court (Docket No. 5).

Respectfully Submitted,

IGANACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

/s/ Frederick S. Phillips
FREDERICK S. PHILLIPS
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, D.C. 20044-7611
(202) 305-0439
Frederick.phillips@usdoj.gov

BRIAN C. KIPNIS
Assistant United States Attorney
5220 United States Courthouse
700 Stewart Street
Seattle, WA 98101-1271
(206) 553-7970

CARA STEINER-RILEY
Assistant Regional Counsel
U.S. EPA, Region 10
Seattle, WA

# CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2012, an electronic copy of the foregoing Motion to Enter Consent Decree was provided by the ECF filing system and via email to the following individuals who represent Trident and the commenters, respectively:

/s/ Frederick S. Phillips

Joe Plesha, Esq.
Chief Legal Officer
Trident Seafoods Corporation
5303 Shilshole Ave. N.W.
Seattle, WA 98107-4000
(206) 783-3818
(800) 426-5490
JoeP@TridentSeafoods.com

Carlos Mateo Paz-Soldan
Attorney for Commenter Central Bering Sea Fisherman's Association
DTB Associates, LLP
1700 Pennsylvania Ave., NW, Suite 200
Washington, DC 20006-4707
cpaz-soldan@dtbassociates.com

Joan Bondareff
Attorney for Commenter TDX Corporation
Joan M. Bondareff | Of Counsel | Blank Rome LLP
The Watergate, 600 New Hampshire Ave. NW
Washington, DC 20037
Bondareff@BlankRome.com

Thomas P. Schlosser
Morisset, Schlosser, Jozwiak & Somerville
Attorneys for Commenter Aleut Community of St. Paul
1115 Norton Building
801 Second Avenue
Seattle, WA 98104-1509
t.schlosser@msaj.com